1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

PAUL E. ELSESSER,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

CASE NO. 13-cv-05148 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17

18

19

20

21

22

23

24

     This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

17, 18, 19).

     After considering and reviewing the record, the Court finds that the ALJ properly

evaluated plaintiff's credibility, relying on inconsistencies between plaintiff's allegations

and plaintiff's report in the medical record, inconsistencies with the objective medical evidence and inconsistencies with medical opinion evidence. The ALJ also properly evaluated the medical and lay evidence, noting that plaintiff's examining doctors relied on plaintiff's subjective complaints.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, PAUL E. ELSESSER, was born in 1973 and was 32 years old on the alleged date of disability onset of June 12, 2006 (*see* Tr. 182-83, 184-87). Plaintiff was in special education and graduated from an alternative high school (Tr. 405).   Plaintiff has work experience building trusses, cashiering, doing maintenance at a car wash, remanufacturing auto parts, and, briefly, working as a cook (Tr. 38-44).  His last job was building trusses and he has not worked since getting injured on the job (Tr. 45-46).

According to the ALJ, plaintiff has at least the severe impairments of "lumbar spondylosis, post laminectomy syndrome, pain syndrome, depressive disorder, anxiety disorder, and polysubstance dependence in remission (20 CFR 404.1520(c) and 416.920(c))" (Tr. 13).

At the time of the hearing, plaintiff was living with a roommate/girlfriend (Tr. 66).

PROCEDURAL HISTORY

Following plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 182-83, 184-87; *see also* Tr. 101-03, 104-07, 108, 111, 114-15, 116-18), his requested hearing was held

before Administrative Law Judge Ruperta Alexis ("the ALJ") on June 8, 2011 (*see* Tr. 33-96). On August 18, 2011, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.8-32).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred in giving little weight to the opinions of four examining psychologists and a mental health professional while giving greater weight to the opinions of two non-examining sources and another mental health professional; and (2) Whether or not the ALJ gave legally sufficient reasons for finding plaintiff not fully credible (*see* ECF No. 17, p. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the ALJ erred in giving little weight to the opinions of four examining psychologists and a mental health professional while giving greater weight to the opinions of two non-examining sources and another mental health professional**.

It should first be noted that the ALJ's evaluation of the medical evidence regarding plaintiff's physical impairments are not at issue – plaintiff disputes, however, the ALJ's evaluation of the plaintiff's mental impairments.

A.  Examining doctors

Plaintiff contends that the ALJ's rejection of the opinions by the three examining psychologists and a psychiatrist requires clear and convincing rationale, as their opinions are not contradicted.  However, the evidence in the record indicates that many of these opinions are contradicted by state reviewing psychologists; therefore, for those opinions a different standard applies.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a doctor's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record."  *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion

by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v.Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752).

   "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

   Here, the ALJ failed to credit some of the opinions of plaintiff's examining psychologists and psychiatrist regarding social functioning, on the basis that they relied for such opinions on plaintiff's subjective allegations, and the ALJ found that plaintiff's allegations should not be credited fully. Some of those opinions were contradicted by the state reviewing psychologists; therefore, a lower standard of review applies (*see* Tr. 23 (*citing* Tr. 530-33)). Some of these opinions regarding social functioning were not directly addressed by the reviewing psychologists (*id.)*.  Nevertheless, the ALJ's analysis of these opinions meets the higher "clear and convincing" standard; therefore, the Court will use that standard for purposes of analysis.

   As explained further below, the Court herein upholds the ALJ's determination regarding her determination not to credit fully plaintiff's allegations and testimony, *see infra*, section 2. Therefore, to the extent that the examining psychologists and psychiatrist relied for some of their opinions on plaintiff's subjective complaints without objective basis for these opinions, the ALJ did not err in failing to credit such opinions. "A

physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been" discounted properly. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)  (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).

i.  Dr. D. Knopes, Ph.D., examining doctor

Dr. Knopes examined plaintiff on February 21, 2008 (*see* Tr. 286-91). With respect to his specific opinions regarding plaintiff's limitations in the area of social functioning, Dr. Knopes indicated that plaintiff "feels judged", experiences "social anxiety and avoidance", and feels persecuted and anxious in work situations (*see* Tr. 288). These factors clearly were reported by plaintiff and were not the result of clinical observations or test results (*see id.*).

The Court concludes that the ALJ's finding that Dr. Knopes relied for his opinions regarding plaintiff's limitations in social functioning on plaintiff's subjective complaints is a finding based on substantial evidence in the record as a whole. The Court also notes the opinion by Dr. Knopes that plaintiff's degree of impairment would not necessarily persist for longer than six months and that he should be reevaluated at that time (*see* Tr. 288). This would be another independent reason supporting the ALJ's discounting of Dr. Knopes' opinion.

ii.  Dr. Jack T. Norris, Ph.D., examining doctor

Dr. Norris examined and evaluated plaintiff on August 6, 2008 (*see* Tr. 390-412). Regarding cognitive factors, Dr. Norris found that plaintiff had moderate limitations,

specifically opining that plaintiff had moderate limitation in his ability to exercise

judgment and make decisions (*see* Tr. 401). With respect to his opinion regarding

plaintiff's limitations in social factors, Dr. Norris noted reliance on plaintiff's activities of

daily living, plaintiff's subjective history, and that plaintiff "is distrustful and has panic

with no known precursor; very low self-confidence at this time" (*see* Tr. 401). These

factors clearly derive from plaintiff's subjective report (*see id.*). The Court also notes that

Dr. Norris indicates that his opinions on social limitations also are based on clinical

observations and testing, but a review of plaintiff's mental status examination results

does not reveal any basis for these opinions (*see* Tr. 403-04, 406-09). The Court also

notes that in the report from Dr. Norris regarding activities of daily living and friends and

socialization, Dr. Norris indicated no impairment, noting "OK around people, usually

stays at home, but has friends visit" (*see* Tr. 404).

The Court concludes that the ALJ's finding that Dr. Norris relied for his opinions

regarding plaintiff's limitations in social functioning on plaintiff's subjective complaints

is a finding based on substantial evidence in the record as a whole. The Court finds no

error in the ALJ's evaluation of the opinion of Dr. Norris.

iii.   Dr. Brett T. Copeland, Psy.D., examining doctor

Dr. Copeland examined and evaluated plaintiff in January, 2009 (*see* Tr. 262-76).

Regarding his opinions on plaintiff's limitations with respect to social factors, Dr.

Copeland indicated that plaintiff "suffers from social hypervigilance and may be prone to

anger" (*see* Tr. 264).

1   Based on a review of the relevant record, the Court concludes that the ALJ's

2   finding that Dr. Copeland relied on plaintiff's subjective reports for his opinions

3   regarding limitations on social factors is a finding based on substantial evidence in the

4   record as a whole. The Court also notes that when assessing plaintiff's activities of daily

5   living, Dr. Copeland opined that plaintiff had no impairment with respect to friends and

6   socialization, noting that plaintiff had "good support" (*see* Tr. 267). The Court concludes

7   that the ALJ's determination to not credit fully Dr. Copeland's opinions regarding

8   plaintiff's limitations in social factors is substantiated by clear and convincing rationale

9   based on substantial evidence in the record as a whole.

10

11              iv.   Dr. Bruce A. Eather, Ph.D., examining doctor

12          Dr. Eather examined and evaluated plaintiff on June 17, 2009 (*see* Tr. 506-15).

13   When noting plaintiff's activities of daily living, Dr. Eather opined that plaintiff suffered

14   from no impairment in the area of friends and socialization, noting that he has a "couple

15   of friends" (*see* Tr. 512). Regarding the basis for his opinions on plaintiff's limitations

16   with respect to social factors, Dr. Eather noted that plaintiff "has a girlfriend and a couple

17   of friends," that plaintiff indicated in his history that he suffered from "poor social skills

18   and judgment," that he has "low stress tolerance" (*see* Tr. 508). Although Dr. Eather

19   indicated some other bases for his opinions, the Court concludes that the ALJ's finding

20   that his opinions regarding the social limitations suffered by plaintiff were based on

21   plaintiff's subjective reports is a finding based on substantial evidence in the record as a

22   whole. The Court finds no harmful error.

23

24

1    Based on the relevant record and for the reasons discussed, the Court concludes

2    that the ALJ did not commit harmful legal error in his evaluation of the medical opinion

3    evidence from the examining doctors. The ALJ's findings are based on substantial

4    evidence in the record and the rationale is clear and convincing.

5        Also, as noted above, many of these opinions regarding social functioning were

6    contradicted by the state reviewing psychologists, who concluded that plaintiff "could

7    have limited coworker and supervisor contacts, but that he should avoid the public" (Tr.

8    23 (*citing* Tr. 530-33, 623)).  This finding may be used to support the rejection of

9    contradicting opinions by examining psychologists and psychiatrists, if supported by

10   substantial evidence in the record, which it is.  *See Van Nguyen v. Chater*, 100 F.3d 1462,

11   1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

12

13       B.  Lay Opinions

14       Plaintiff also contends that the ALJ erred by giving greater weight to one lay

15   opinion over another lay opinion, arguing that germane reasons were not provided for the

16   ALJ's failure to credit fully the opinions of Ms. Dean.

17       Pursuant to the relevant federal regulations, in addition to "acceptable medical

18   sources," that is, sources "who can provide evidence to establish an impairment," 20

19   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

20   who are defined as "other non-medical sources" and "other sources" such as nurse

21   practitioners, therapists and chiropractors, who are considered other medical sources, *see*

22   20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-

23   24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR"

24

06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

        i.  Mr. Michael T. Werner, MSW, MHP, examining lay source

The ALJ gave significant weight to the opinions of Mr. Werner (*see* Tr. 23). Although the ALJ appears to have erred by referring to Mr. Werner as a treating therapist, the ALJ indicated that she was giving significant weight to his opinions due to the reasoning within her written decision, including the discussion of the examining sources' opinions discussed briefly by the Court above and including the objective medical evidence quoted and discussed in part by the Court subsequently in the context of plaintiff's credibility, *see infra*, section 2. The Court finds no harmful error.

        ii.  Ms. Kimberly Dean, MA, MHP, LMFT, examining lay source

The ALJ gave only little weight to the opinion of Ms. Dean, which was provided less than one year subsequent to the opinion of Mr. Werner. The ALJ provided two reasons for failing to credit fully the opinion by Ms. Dean, including that "nothing in the objective record showed that the claimant's functioning deteriorated between Mr. Werner's assessment in February 2010 and January 2011," when Ms. Dean provided her lay opinion (*see* Tr. 23). The ALJ also found that nothing in the objective record supported the degree of limitation opined by Ms. Dean (*see id.*).

The Court concludes that the ALJ did not err when resolving the conflict between the lay opinions provided by Mr. Werner and Ms. Dean. The ALJ's finding that the objective medical evidence did not support any deterioration in plaintiff's condition in the time period between the opinion by Mr. Werner and the time of the subsequent opinion of greater limitations by Ms. Dean is a finding based on substantial evidence in the record.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The Court concludes that the ALJ provided germane rationale for failing to credit fully the opinion by Ms. Dean. *See Turner, supra*, 613 F.3d at 1224.

(2)     **Whether or not the ALJ gave legally sufficient reasons for finding plaintiff not fully credible**.

The ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

Here, plaintiff argues that the ALJ improperly relied on plaintiff's failure to take psychotropic medications as a reason to discount plaintiff's credibility after he had tried

1    approximately fifteen different psychotropic medications. Even if the ALJ's reliance on

2    this credibility factor was erroneous, the ALJ offered other rationale for her failure to

3    credit fully plaintiff's allegations and testimony.

4        The Ninth Circuit has "recognized that harmless error principles apply in the

5    Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

6    (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

7    Cir. 2006) (collecting cases)). The court noted that "several of our cases have held that an

8    ALJ's error was harmless where the ALJ provided one or more invalid reasons for

9    disbelieving a claimant's testimony, but also provided valid reasons that were supported

10   by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look

11   at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The

12   court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's

13   error is harmless where it is 'inconsequential to the ultimate nondisability

14   determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,

15   1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow

16   the rule that courts must review cases "'without regard to errors' that do not affect the

17   parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407

18   (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

19       Here, the ALJ noted that plaintiff's allegation of side effects from his Interferon

20   treatment prescribed for his hepatitis C is contradicted by the opinion of medical expert

21   Dr. Arthur Lorber, M.D., who "did not believe that there was a period during which the

22   claimant's Interferon treatment 'could be pinpointed as causing fatigue' for 12

consecutive months" (*see* Tr. 15; *see also* Tr. 86). Similarly, the Court notes Dr. Lorber's testimony that "I do not see that there are any significant side effects from his prescribed medication" (Tr. 85). Contradiction with an opinion from an acceptable medical source is a valid factor supporting the ALJ's failure to credit fully plaintiff's allegations and testimony. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ's finding of a contradiction here is based on substantial evidence in the record.

The ALJ also found that many of plaintiff's depressive and anxiety symptoms were "related to situational stressors, including legal issues surrounding the custody and visitation of his daughter, the death of a family member, relationship difficulties with his girlfriend, and back pain and medical issues" (Tr. 21). This is a finding based on substantial evidence in the record as a whole. In addition, the fact that plaintiff's mental health symptoms were caused in part by situational factors is a legitimate reason supporting the ALJ's failure to credit fully plaintiff's allegations regarding the limiting effects of his mental health impairments. The ALJ also noted that despite the situational stressors, plaintiff "was able to relax and obtain enjoyment from caring for his tropical fish, going to the lake to fish, working on his computer, listening to music,[] playing guitar, [and] socializ[ing] with a friend who shared his interest in music" (Tr. 21).

When failing to credit fully plaintiff's testimony and allegations, the ALJ also relied on a finding that plaintiff's allegations are inconsistent with the objective medical evidence. This finding, too, is supported by substantial evidence in the record as a whole. The ALJ included the following discussion in her written decision:

1    Regarding his lumbar symptoms, in an August 21, 2006 letter to Dr.
     Zhong, Dr. Cové noted that a post operative lumbar MRI "did not show
2    a residual or recurrent herniation." The claimant had a single-level disc
     degeneration, but Dr. Cové believed he had "disproportionate disability,"
3    he was a smoker, and he was very young, so he did not recommend a
     spinal fusion or further surgery, as that "often may exacerbate
4    preexistent somatic [fixation]." (Internal citation to Exhibit 7F/14, *i.e.*,
     Tr. 354).
5    . . . .
6    Dr. Mohit's April 2009 neurological evaluation of the claimant was
     grossly normal. Muscle bulk, strength, and tone were normal in the
7    upper and lower extremities. Sensation to light touch was normal
     throughout the upper and lower extremities. Deep tendon reflexes were
8    within normal limits throughout the upper and lower extremities. While
     the March 2009 lumbar MRI showed a small area of recurrent disk (sic)
9    at the L5 – S1 level, it did "not appear to be significantly compressive."
     Dr. Mohit noted he had "a long discussion" with the claimant about his
10   treatment options and told him that "quitting smoking and weight loss
     would be a significant improvement in his overall spine health." Dr.
11   Mohit did not think the claimant was a candidate for revision micro-
     discectomy or lumbar fusion. (Internal citation to Exhibit 11 F/2, *i.e.*, Tr.
12   440).
13
14   Records from Dr. [Edward A.] Posuniak, [Jr., D.O.], show that the
     claimant's pain symptoms improved with medication and treatment
15   management. At a September 15, 2009 follow-up visit with Dr.
     Posuniak, the claimant reported that with current treatment and weight
16   loss, he was "having good days and bad days" . . . . strength was 5/5
     throughout the upper and lower extremities . . . . (internal citation to
17   Exhibit 20 F/21, *i.e.*, Tr. 618).
18   On November 3, 2009, the claimant told Dr. Posuniak that his
     medications seemed to help, his exercises were not painful, and his sleep
19   was not interrupted. He had not tripped and fallen due to ankle
     weakness. Neurologic examination showed no abnormalities. (Internal
20   citation to Exhibit 20 F/18, *i.e.*, Tr. 615).
21   On January 5, 2010, the claimant told Dr. Posuniak that he was taking
     gabapentin 300 mg three times per day and this seem to be working well
22   . . . . Neurologic examination was normal (internal citation to Exhibit
     35F/39, *i.e.*, Tr. 862).
23
24

ORDER ON PLAINTIFF'S COMPLAINT - 14

1   On July 9, 2010, the claimant said that still got radicular symptoms, but gabapentin 300 mg two capsules per day had brought his pain down to 5/

2   10. He was "quite happy with that." He was not tripping and falling. Neurologic examination was normal. (Internal citation to Exhibit 35F/26,

3   *i.e.*, Tr. 849).

4

On August 10, 2010, note shows that the claimant was on Voltaren 50

5   mg three times a day and told Dr. Posuniak that it was "working far better than the meloxicam7.5 mg twice per day." He said that his nerve

6   pain was better with current medications. . . . . Neurologic examination was normal. (Internal citation to Exhibit 35F/22, *i.e.*, Tr.

7   845).

8

On September 7, 2010, the claimant told Dr. Posuniak that his

9   medications and exercise were helpful and he was not complaining of any significant back pain. He also said that hot baths and showers

10   seemed to help. Neurologic examination was normal. (Internal citation to Exhibit 35F/19, *i.e.*, Tr. 842).

11   . . . . .

December 13, 2010 in January 10, 2011 treatment notes show that opioid

12   management was "working quite well": the claimant was medically stable without any neurologic deficit. (Internal citation to Exhibit 35F/7,

13   10, *i.e.*, Tr. 830, 833).

14

Additionally, at the hearing, the claimant admitted that when he took

15   oxycodone and morphine and smoke marijuana, it helped his pain "a lot."

16  (Tr. 20-21).

17      Based on the relevant record, the Court concludes that the ALJ's discussion of the

18  objective medical evidence is supported by substantial evidence in the record as a whole,

19  as the record substantiates her discussion and contains multiple indications of normal

20  neurological examinations with normal strength and normal reflexes demonstrated by

21  plaintiff (*see* Tr. 354, 440, 615, 618, 830, 833, 842, 845, 849, 862). For example, plaintiff

22  was assessed as "neurologically intact" on December 13, 2010 by Dr. Posuniak; and, on

23  September 7, 2010, Dr. Posuniak indicated that at that time, plaintiff was "not now

24

ORDER ON PLAINTIFF'S COMPLAINT - 15

complaining about any significant back pain" (*see* Tr. 833, 842). On January 10, 2011, Dr. Posuniak observed that plaintiff's "mood and affect are appropriate [and] cognition is normal" (Tr. 830).

The ALJ relies not only on the objective medical evidence, but also relies on the medical opinion evidence and inconsistencies between plaintiff's allegations of disabling pain and plaintiff's report to his doctor that he did not have any significant back pain. By doing so, the ALJ has provided clear and convincing rationale for her determination not to credit fully plaintiff's allegations and testimony.

Based on the record as a whole and for the reasons stated, the Court concludes that the ALJ did not commit harmful legal error during the evaluation of plaintiff's allegations and credibility.

<u>CONCLUSION</u>

Based on the reasons stated herein and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for defendant and the case should be closed.

Dated this 19^(th) day of June, 2014.

J. Richard Creatura
United States Magistrate Judge